UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| RAMIRO MOLINA, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. C-09-354 |
| | § | |
| THOMAS J. VILSACK, | § | |
| | § | |
| Defendant. | § | |

**ORDER**

On this day came on to be considered Defendant's Motion for Summary Judgment. (D.E. 21.) For the reasons stated herein, Defendant's Motion for Summary Judgment is GRANTED and this action is DISMISSED WITH PREJUDICE.

**I.      Jurisdiction**

This Court has federal subject matter jurisdiction over this case pursuant to 29 U.S.C. § 1331 because Plaintiff brings suit pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16(c).

**II.     Factual and Procedural Background**

Plaintiff is a Climate Technical Specialist with the United States Department of Agriculture Natural Resources Conservation Service (USDA-NRCS) in Alice, Texas. (D.E. 22 at 1-2.) Prior to this position, he worked as the Zapata County Soil Survey Project Leader in Alice. From 2001 to 2007, Plaintiff was employed as the Major Land Resource Area (MLRA) Project Leader in Robstown, Texas. (D.E. 22 at 2; D.E. 22-1.) His first-line supervisor is Mike Risinger, State Soil Scientist, and second-line supervisor is Donald W. Gohmert, State Conservationist. (D.E. 1 at 3.) Plaintiff has been employed by the USDA for over 31 years. (D.E. 22 at 1-2.)

Plaintiff alleges that, while employed at a USDA facility in Robstown, he was the target of discrimination and retaliation on the basis of his race and national origin. These allegations stem from a July 10, 2007 fact-finding meeting involving supervisor Mike Risinger and Human Resources officer Ginger Price, which Plaintiff and several colleagues attended. The meeting followed several disagreements Plaintiff had with certain subordinate employees, related to their treatment in the office. (D.E. 21-10 at 3, 5.)

During the meeting, Mr. Risinger allegedly made the following comment to Plaintiff: "It is because of your culture, heritage, family background, or your life away from work that has contributed to you being a poor supervisor." During the same meeting, Ms. Price told Plaintiff, "speaking Spanish in the Survey and Field Offices is unprofessional and rude and [you] need[] to stop doing it." Plaintiff was "shocked and offended" by these statements. Plaintiff alleges that these statements showed discriminatory animus towards him based upon his national origin. Plaintiff claims that this created a hostile work environment, and constituted discrimination. (D.E. 1 at 4-5.)

On July 23, 2007, Plaintiff received an e-mail from Mr. Risinger reassigning him to the Alice facility, which Plaintiff considered to be a demotion, as it allegedly was a less favorable work site in terms of promotional opportunities and career enhancement. He also claims to have been stripped of supervisory responsibilities. The transfer was effective on July 30, 2007. (D.E. 22-1 at 2; D.E. 21-7; D.E. 21-8.) Plaintiff contends that he had significantly fewer responsibilities in his role as first-line supervisor in Alice, as he had no staff to supervise and had no authority to approve leave or certify payroll, tasks that he had customarily handled while at Robstown. (D.E. 1 at 5.) On September 11 and

13, 2007, Plaintiff was informed that he was not allowed to go to the Robstown facility without prior authorization. (D.E. 1 at 5; D.E. 22-6.)

Following the transfer to Alice, Plaintiff contacted Mr. Gohmert on August 15 and 16, 2007, asking whether the statements made during the July 10 meeting were consistent with policy. (D.E. 1 at 4; D.E. 22-3, 22-4.) Plaintiff eventually spoke with a USDA-NRCS EEO Counselor on October 16, 2007, after writing a letter to the USDA-NRCS Civil Rights Director on October 4, 2007. (D.E. 21-19 at 8.)

Plaintiff alleges that his reassignment and subsequent ban from the Robstown facility was contrary to established policies and guidelines, and was in retaliation for his discrimination claims. Plaintiff claims to have received a "fully successful" performance evaluation for the period prior to his transfer, and states that he should have been placed on an Opportunity to Improve Plan rather than being reassigned. (D.E. 1 at 6.) Further, upon his transfer, new performance standards were allegedly not adopted, contrary to established policy. Plaintiff contends that Mr. Gohmert was involved in the alleged discriminatory scheme, and claims that a white employee was placed on an Opportunity to Improve Plan in a similar situation. (D.E. 1 at 6.)

Based upon these allegations, Plaintiff filed his Original Complaint in this action on June 3, 2009, bringing claims for (1) discrimination on the basis of race, (2) discrimination on the basis of national origin, and (3) retaliation in violation of Title VII of the Civil Rights Act of 1964. (D.E. 1 at 7-8.)

Defendant filed a Motion for Summary Judgment on September 15, 2010.  (D.E. 21.)  Plaintiff filed a Response on October 6, 2010.  (D.E. 22.)  Defendant filed a Reply on October 21, 2010.  (D.E. 24.)[1]

### III.   Discussion

#### A.   Summary Judgment Standard

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The substantive law identifies which facts are material.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ellison v. Software Spectrum, Inc., 85 F.3d 187, 189 (5th Cir. 1996).  A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; Judwin Props., Inc., v. U.S. Fire Ins. Co., 973 F.2d 432, 435 (5th Cir. 1992).

On summary judgment, "[t]he moving party has the burden of proving there is no genuine issue of material fact and that it is entitled to a judgment as a matter of law." Rivera v. Houston Indep. Sch. Dist., 349 F.3d 244, 246 (5th Cir. 2003); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the moving party meets this burden, "the non-moving party must show that summary judgment is inappropriate by setting forth specific facts showing the existence of a genuine issue concerning every essential component of its case." Rivera, 349 F.3d at 247.  The nonmovant "may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e)(2); see also First Nat'l

---

[1] Defendant's Unopposed Motion for Leave to File Reply Brief is GRANTED.  (D.E. 23.)

Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 270 (1968). The nonmovant's burden "is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." Willis v. Roche Biomedical Labs., Inc., 61 F.3d 313, 315 (5th Cir. 1995); see also Brown v. Houston, 337 F.3d 539, 541 (5th Cir. 2003) (stating that "improbable inferences and unsupported speculation are not sufficient to [avoid] summary judgment").

Summary judgment is not appropriate unless, viewing the evidence in the light most favorable to the non-moving party, no reasonable jury could return a verdict for that party. Rubinstein v. Adm'rs of the Tulane Educ. Fund, 218 F.3d 392, 399 (5th Cir. 2000).

### B. Analysis

Defendant makes several arguments in his Motion for Summary Judgment. First, he contends that Plaintiff's claim is time-barred as he did not contact an EEO Counselor within the forty-five days required by 29 C.F.R. § 1614.105(a). Second, he contends that Plaintiff's transfer to the Alice facility was not an "ultimate employment decision," as it was a purely lateral transfer. Finally, Defendant contends that Plaintiff cannot carry his burden to establish a prima facie case of retaliation. (D.E. 21 at 3-6.)

In response, Plaintiff contends that his claim is not time-barred, because he was not notified of the 45-day time period, and made what "he believed was an appropriate inquiry for commencing the discrimination charge process," based upon agency publications, when he contacted Mr. Gohmert. Plaintiff further argues that the agency accepted and investigated his claim without a finding of untimeliness. (D.E. 22 at 4-6.)

Plaintiff also contends that the transfer constituted an ultimate employment decision, as it was a demotion, and that he has made out a retaliation claim. (D.E. 22 at 6-7.)

The Court first addresses the administrative procedures required by 29 C.F.R. § 1614.105(a), then considers the application of these procedures to Plaintiff's discrimination and retaliation claims.

### 1. Administrative Procedures, 29 C.F.R. § 1614.105(a)

Before seeking judicial relief for a Title VII violation, federal employees "must exhaust their administrative remedies by filing a charge of discrimination with the EEO division of their agency." Pacheco v. Mineta, 448 F.3d 783, 788 (5th Cir. 2006). Importantly, "[f]ailure to notify the EEO counselor in timely fashion may bar a claim, absent a defense of waiver, estoppel, or equitable tolling." Pacheco v. Rice, 966 F.2d 904, 905 (5th Cir. 1992). "Complaints alleging retaliation prohibited by [Title VII] are considered to be complaints of discrimination for purposes of [Part 1614]." 29 C.F.R. § 1614.103(a).

> Title 29 C.F.R. § 1614.105(a) provides, as part of the charge-filing process:
>
> (a) Aggrieved persons who believe they have been discriminated against on the basis of race, color, religion, sex, national origin, age, disability, or genetic information **must consult a Counselor prior to filing a complaint** in order to try to informally resolve the matter.
>
>> (1) An aggrieved person must initiate contact with a Counselor within **45 days of the date of the matter alleged to be discriminatory** or, in the case of personnel action, within **45 days of the effective date of the action**.
>>
>> (2) The agency or the Commission shall extend the 45-day time limit in paragraph (a)(1) of this section when the individual shows that he or she was not notified of the time limits and was not otherwise aware of them, that he or she did not know and reasonably should not have been known that the discriminatory matter or personnel action occurred, that despite due diligence he

>> or she was prevented by circumstances beyond his or her control from contacting the counselor within the time limits, or for other reasons considered sufficient by the agency or the Commission.

29 C.F.R. § 1614.105(a) (emphasis added). It is well established that "[t]he 45-day limitation period begins to run from the time the discriminatory event or personnel action occurs." Carter v. Snow, 2007 WL 2156618, at *3 (S.D. Tex. July 26, 2007) (citing Pacheco v. Rice, 966 F.2d 904, 906 (5th Cir. 1992)). The parties do not dispute that this section is applicable.

The Fifth Circuit has explained that Section 1614.105(a)(2) "codifies the doctrine of equitable tolling," and that a district court "should make an independent judgment about an employee's tolling request" under Section 1614.105(a)(2). Teemac v. Henderson, 298 F.3d 452, 455 (5th Cir. 2002). Nevertheless, "equitable tolling applies only in 'rare and exceptional circumstances,'" Id. at 457,[2] and Plaintiff bears the burden on this issue. Mendoza v. Potter, 2009 WL 700608, at *2 (S.D. Tex. Mar. 17, 2009).

Having reviewed these principles, the Court considers Plaintiff's discrimination and retaliation claims.

### 2. Racial and National Origin Discrimination

Plaintiff contends that his transfer to the Alice office constituted an adverse employment action, based upon his race or national origin, in light of the July 10 comments made by Mr. Risinger and Ms. Price. (D.E. 1 at 4-5, 7.) The record

---

[2] The Fifth Circuit has also occasionally permitted equitable tolling of the forty-five day period in other discrimination cases in three circumstances: "(1) the pendency of a suit between the same parties in the wrong forum; (2) the plaintiff's lack of awareness of the facts supporting his claim because of the defendant's intentional concealment of them; and (3) the EEOC's misleading the plaintiff about his rights." Manning v. Chevron Chem. Co. LLC, 332 F.3d 874, 880 (5th Cir. 2003). None of these conditions are applicable in this case.

demonstrates, however, that Plaintiff failed to follow the administrative procedures set out in Section 1614.105(a) before filing suit in this Court.

It is undisputed that Plaintiff did not have contact with an official EEO Counselor until October 16, 2007, when he was contacted by EEO Counselor Nettie Moment following his October 4, 2007 letter to Mr. Joseph Hairston, Director, USDA-NRCS Civil Rights Division in Beltsville, Maryland, "complaining about the situation in Texas." (D.E. 21-10 at 8, 9.) It is also clear from the evidence that Mr. Gohmert (whom Plaintiff first contacted on August 15, 2007) is not an official EEO Counselor, even if he has certain EEO responsibilities. As the alleged discriminatory comments were made on July 10, and Plaintiff's reassignment to Alice (the adverse employment action) was effective July 30, 2007, Plaintiff should have contacted an EEO Counselor no later than September 13, 2007.

Plaintiff contends that the forty-five day period should be extended because he "was not notified by the agency of the 45-day time limit." (D.E. 22.) This statement, however, is contradicted by Plaintiff's own deposition. When asked, "you do understand that it says on the notice, the posted notice, in order to protect your civil rights, you must contact an EEO counselor within 45 calendar days of the alleged discriminatory event. Were you aware of that?," Plaintiff responded "Yes." (D.E. 21-10 at 9.) Similarly, when asked, "prior to 2007, you were aware that these types of posters described how to contact the Department of Agriculture EEO counselor, is that correct?," Plaintiff responded in the affirmative. (D.E. 21-10 at 8.) "Informational posters are generally considered a sufficient method of providing notice to an employee . . . ." Mendoza v. Potter, 2009 WL 700608, at *3 (S.D. Tex. Mar. 17, 2009) (citing Teemac, 298 F.3d at

456-57 & n.9). When asked why he "didn't contact an EEO counselor in August of 2007," Plaintiff did not contend that he was unaware of this requirement, but rather stated, "[i]t's agency policy to try to settle the issue at the lowest possible level and as informal as possible, and that's the approach I took." (D.E. 21-10 at 9.)

Importantly, Plaintiff never stated during his deposition that he was not "notified of the time limits" or "was not otherwise aware of them." There is also no suggestion that Plaintiff "did not know and reasonably should not have been known that the discriminatory matter or personnel action occurred," or that "despite due diligence he . . . was prevented by circumstances beyond his . . . control from contacting the counselor within the time limits." § 1614.105(a)(2). In fact, Plaintiff admitted during his deposition that he received annual training on EEO policies and procedures. (D.E. 21-10 at 3 ("We have annual training on EEO and civil rights that are mandatory by the agency, and they're usually in the form of online courses we have to take."; "[Prior to the online courses] [u]sually we had personnel from the state office come out to the areas or zone offices and then have a training session that was inclusive of a lot of offices.") Plaintiff also admitted that as a supervisor, he was responsible for posting EEO information on office bulletin boards. (D.E. 21-10 at 8 ("Q: [W]ere you responsible for making sure that appropriate [EEO] information was posted on this board? A: Yes.")[3] Particularly in light of Plaintiff's admitted knowledge of the EEO administrative requirements, and his status as a supervisor who was responsible for posting EEO notices in the office, the Court

---

[3] In his Response, Plaintiff includes one poster titled "Texas Civil Rights Advisory Committee," which lists Donald W. Gohmert as "Deputy Equal Employment Officer." (D.E. 22-5.) Plaintiff however, does not dispute that other notices in his office specifically included the requirement to contact an EEO counselor. (D.E. 21-10 at 9.)

concludes that none of the provisions of Section 1614.105(a)(2) are applicable, nor do any other equitable tolling principles excuse the delay.

While Plaintiff has submitted an affidavit with his response to Defendant's Motion for Summary Judgment, in which he suggests that he was not aware of the Section 1614.105 requirements, it is well established that a "non-movant cannot defeat a motion for summary judgment by submitting an affidavit which directly contradicts, without explanation, his previous testimony." Albertson v. T.J. Stevenson & Co., Inc., 749 F.2d 223, 228 (5th Cir. 1984); see also Copeland v. Wasserstein, Perella & Co., Inc., 278 F.3d 472, 482 (5th Cir. 2002). Plaintiff's claims in his Affidavit that he was not aware or not informed of the administrative exhaustion requirements (D.E. 22-1 at 2) are belied by his deposition testimony, and any discrepancies are not explained. To the extent Plaintiff's affidavit conflicts with his deposition testimony, it cannot defeat the motion for summary judgment.

Plaintiff also argues that his contact with Mr. Gohmert in August 2007 was sufficient to satisfy the requirements of Section 1614.105(a)(2). (D.E. 22 at 4-5.) The Fifth Circuit, however, has rejected this argument, explaining that only contact with an official EEO Counselor satisfies the Section 1614.105(a)(2) requirements. In Lewis v. Rumsfeld, 273 F.3d 1108, 2001 WL 1131947, at *2 (Sept. 20, 2001), the court held that the plaintiff's meeting with a sergeant at the Army Air Force Exchange Service's Inspector General's Office "does not satisfy the requirements of 29 C.F.R. § 1614.105(a)(1) because [the sergeant] is not an EEO Counselor within the meaning of the regulation." The court explained:

> An EEO Counselor is appointed by the EEO Director of the applicable
> agency and has significant duties that are defined in the regulations; EEO

> Counselors must inform individuals of their rights and responsibilities in writing, they must submit reports to the agency, and they must inform individuals of the relevant time frames. The names, addresses and phone numbers of the EEO Counselors must be clearly posted for employees to see. **Allowing plaintiffs to substitute complaints to other offices for counseling with an EEO Counselor destroys the purpose of having EEO Counselors who must comply with federal regulations**. Thus, [plaintiff's] argument that her complaint to the IG satisfies the section 1614.105(a) requirement that she meet with an EEO counselor within forty-five days is unpersuasive.

2001 WL 1131947, at *2 (emphasis added). The same principle applies here. Plaintiff cannot use his complaint to Mr. Gohmert as a substitute for the formal requirements of Section 1614.105(a). Moreover, even if contact with Mr. Gohmert would otherwise be sufficient to satisfy Section 1614.105(a), the letters fail to address Plaintiff's transfer to Alice, Texas or his purported demotion, which had occurred only weeks earlier. (D.E. 22-3; 22-4.) The transfer and demotion are the "adverse employment actions" upon which Plaintiff bases his discrimination and retaliation claims.

Finally, Plaintiff contends that the agency's acceptance of his claim and subsequent investigation waives the timeliness issue. (D.E. 22 at 5-6.) The Fifth Circuit has explained that an agency does not waive a timeliness objection simply by investigating a claim. Rather, the agency "must make a specific finding that the claimant's submission was timely." Rowe v. Sullivan, 967 F.2d 186, 191 (5th Cir. 1992); Oaxaca v. Roscoe, 641 F.2d 386, 390 (5th Cir. 1981) ("[W]e reject [plaintiff's] contention that the federal agency, by merely accepting and investigating a tardy complaint, automatically waives its objection to the complainant's failure to comply with the prescribed time delays."); see Marquardt v. Leavitt, 2008 WL 320194, at *3 (N.D. Tex. Feb. 6, 2008) (citing Oaxaca). No such finding exists here.

In sum, Plaintiff's racial and national origin discrimination claims are time-barred, as Plaintiff failed to contact an EEO Counselor within the forty-five day period set out in Section 1614.105(a). The Court next considers Plaintiff's retaliation claim.

### 3. Retaliation Claim

In addition to his discrimination claim, Plaintiff makes a claim for retaliation, "in the form of a demotion/reassignment to" the Alice facility after "Plaintiff complained about the discriminatory treatment towards him." (D.E. 1 at 5.) Plaintiff explains that on September 11 and September 13, 2007 he was instructed to leave and not return to the Robstown facility without authorization. (D.E. 1 at 5.) This, however, followed his official reassignment to the Alice facility on July 23, 2007, which became effective on July 30, 2007. (D.E. 21-8 at 1.)[4]

Plaintiff's retaliation claim is time-barred under Section 1614.105(a). As noted above, Plaintiff only spoke with an official EEO Counselor on October 16, 2007, more than forty-five days after the effective date of his reassignment. Further, Plaintiff can invoke none of the equitable tolling provisions of Section 1614.105(a)(2), in light of his knowledge of the Section 1614.105(a) requirements, detailed above.

Although Plaintiff references the September 2007 instructions in his retaliation claim, which fall within the forty-five day period prescribed by Section 1614.105(a), this does not alter the analysis. As noted, "[t]he 45-day limitation period begins to run from the time the discriminatory event or personnel action occurs." Carter v. Snow, 2007 WL 2156618, at *3 (S.D. Tex. July 26, 2007) (citing Pacheco v. Rice, 966 F.2d 904, 906 (5th Cir. 1992)). The relevant personnel action in this case is Plaintiff's July 30, 2007 transfer

---

[4] The Court notes that this alleged adverse employment action occurred *before* Plaintiff made an official complaint to Mr. Gohmert.

from Robstown to Alice, not subsequent instructions regarding whether he could return to Robstown after his transfer.[5] Because Plaintiff did not contact an EEO Counselor until October 16, 2007, more than 45-days after the relevant personnel action, his claim is time-barred.

### 4. Summary

In light of the foregoing, the Court concludes that Plaintiff's discrimination and retaliation claims are time-barred under Section 1614.105(a). As such, they must be dismissed. See, e.g., Miller v. Potter, 359 Fed. App. 535, 536-37 (5th Cir. 2010); Austin v. Potter, 358 Fed. App. 602, 606 (5th Cir. 2010) ("Because Austin failed to initiate contact with an EEO officer within forty-five days, she failed to exhaust her administrative remedies, and therefore the district court properly granted summary judgment in favor of the USPS.").

Because the Court has concluded that Plaintiff's claims are procedurally barred, it need not consider the merits.

### IV. Conclusion

For the reasons stated above, Defendant's Motion for Summary Judgment is GRANTED, and this action is hereby DISMISSED WITH PREJUDICE. (D.E. 21.)

SIGNED and ORDERED this 22nd day of October, 2010.

_____
Janis Graham Jack
United States District Judge

---

[5] Plaintiff does not argue that the "continuing violation theory" is applicable here. "The continuing violation theory provides that where the last act alleged is part of an ongoing pattern of discrimination and occurs within the filing period, allegations concerning earlier acts are not time-barred." McGregor v. Louisiana State University Bd. of Sup'rs, 3 F.3d 850, 866 (5th Cir. 1993). Plaintiff bears the burden to demonstrate "an organized scheme leading to and including a present violation, such that it is the cumulative effect of the discriminatory practice, rather than any discrete occurrence, that gives rise to the cause of action." Huckabay v. Moore, 142 F.3d 233, 239 (5th Cir. 1998).